UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARL Z. GEE,

        Petitioner,                **REPORT AND RECOMMENDATION**
                                                      No. 03-CV-6184(DGL)(VEB)

    -vs-

JAMES CONWAY,

        Respondent.
_____

## I.    Introduction

*Pro se* petitioner Carl Z. Gee ("Gee" or "petitioner") was convicted of robbery for an armed hold-up of a clerk in a convenience store. On November 14, 1997, Gee and a female accomplice entered the convenience store and, after asking the clerk for cigarettes, Gee brandished a gun case and ordered the clerk to open the cash register. Gee's accomplice then went behind the counter and took the money. Realizing that the robbery was being filmed on the store's surveillance camera, Gee ordered the clerk to show him where the surveillance equipment was located. Gee then unsuccessfully tried to get at the videotape, and the pair fled. Later that night, the police showed the clerk the surveillance videotape, which she authenticated. Petitioner subsequently was apprehended and indicted for first and second degree robbery.

Following a jury trial, Gee was convicted of one count of robbery in the first degree (N.Y. Penal law § 160.15(4)). Gee was adjudicated as a persistent violent felony offender and sentenced to an indeterminate term of imprisonment of 20 years to life. The Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed his conviction.

*People v. Gee*, 286 A.D.2d 62 (App. Div. 4th Dept. 2002). The New York Court of Appeals granted leave to address, *inter alia*, Gee's assertion that the clerk's identification testimony should have been precluded, owing to the People's failure to serve the defense with notice of the surveillance tape viewing by the store clerk. *See* N.Y. CRIM. PROC. L. § 710.30. The Court of Appeals held that in viewing the videotape the clerk did not "previously identify [defendant] as such"–i.e., as the defendant in the case–within the meaning of C.P.L. § 710.30(1),[1] and therefore preclusion of the identification testimony was not required. Accordingly, the Court of Appeals affirmed the Fourth Department's order. *People v. Gee*, 99 N.Y.2d 158 (N.Y. 2002), *rearg. denied*, 99 N.Y.2d 652 (N.Y. 2003).

Gee then filed numerous state-court collateral attacks on his conviction, all of which were denied.

This timely habeas corpus petition followed. *See* Docket Nos. 1, 3 & 4. Respondent filed an Answer to the Petition. *See* Docket No. 9. The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1), for the purpose of hearing and deciding non-dispositive motions and issuing a report and recommendation regarding the disposition of Gee's petition.

On April 6, 2005, attorney Donald M. Thompson, Esq. ("habeas counsel") filed a notice of appearance on behalf of petitioner. See Docket No. 12. Gee, acting *pro se*, subsequently filed a Motion for Leave to File a Supplemental Habeas Petition. *See* Docket Nos. 16-1 & 16-2. The

---

[1] C.P.L. § 710.30(1) provides as follows: "[w]henever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, or (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." N.Y. CRIM. PROC. L. § 710.30(1).

Court ordered respondent to respond to the motion, and respondent consented to petitioner's request to file a supplemental petition. *See* Docket Nos. 17 & 18. Upon respondent's consent, the Court issued an Order granting petitioner's motion to file a supplemental petition. *See* Docket No. 19. In this Order, the Court indicated that the operative pleading in this matter is now the "Proposed Supplemental Petition" (hereinafter, the "Supplemental Petition") attached as part of Docket Nos. 16-1 & 16-2. At the Court's direction, respondent submitted an Answer in opposition to Gee's Supplemental Petition. *See* Docket No. 20.

Gee's Supplemental Petition raises only claims of ineffectiveness of counsel; he asserts errors on the part of the attorney who represented him during the pre-trial phase of the proceedings; the attorney who represented him at trial; and appellate counsel. For the reasons that follow, I recommend that Gee's request for a writ of habeas corpus be denied and that the Supplemental Petition be dismissed.

## II.     Factual Background

Amy Butler testified at trial that she was working alone at the Kwik-Fill gas station in Greece, New York, on November 14, 1997, when two people, a black man with a beard and a thin white woman, came in at about 11:20 p.m. The man asked for cigarettes and rolling paper and as Butler reached for the items, he told her to step back and follow his instructions. He had his hand inside a gun case that he pointed at her. He commanded her to open the cash register and his accomplice took out the money, about $86, and put it into a plastic handbag. The man then ordered Butler into the back room and told her to show him where the video surveillance equipment was located. She did, but the cabinet was locked and she did not have a key. The man ripped the wires out, but was unable to reach inside to the cassette. Trial Transcript ("Tr.")

205-19.

A customer then drove up and began pumping gas. That caused a "beep" which was heard in the store and the woman who took the money evidently mistook the sound, because she told her companion that Butler must have pulled an alarm. In any case, the woman said, they had been there long enough and she and the gunman fled. Butler then rang the silent alarm and shortly thereafter the police arrived. Tr. 220-22.

In earlier testimony, Police Officer Lou Buduson, the first to respond to the scene of the robbery, testified that he retrieved the videotape and that he had played it that night for Butler. Tr. 175-76. The prosecutor had been unaware of that viewing and had not included it in his pretrial notice. Tr. 195. The defense moved in limine to preclude Butler from identifying the defendant at trial on the ground that such notice was required, but the court held otherwise, reasoning that the purpose of such notice was to enable the defense to make a pretrial motion to suppress on constitutional grounds and that, without more, "the viewing of a videotape of a criminal event as it unfolds" would not give rise to such a motion. Tr. 193. Butler was therefore permitted to testify that she had given a statement to the officers and to confirm that she been shown the videotape, which depicted "the whole incident." It was played for the jury as she narrated. Tr. 223-33, 254; Trial Exhibit ("Tr. Exh.") 17.

Butler further testified, without objection, that on December 29, 1997, she attended a line-up at the Public Safety Building and recognized petitioner as the man who had robbed the store and who appeared on the videotape, although by the time of trial he had more facial hair and less on top of his head. Tr. 234-37. In cross-examination, the defense brought out that on November 19, a few days after the robbery, Butler had been shown a number of still photographs

"taken from the videotape." Tr. 255, 262; Tr. Exh. 19. Both the display of these photographs and the line-up had been upheld after a pretrial hearing. The hearing court found as fact that there had been "no suggestion or direction to select a specific individual" at the line-up. The court further found that the viewing of the photographs, which had been described to Butler as having been extracted from the videotape and which she confirmed depicted the person who had robbed her, was also not "unduly suggestive" in that it did not create any possibility of "misidentification." Record on Appeal at 54-57.

Petitioner did not testify. The defense called Gee's brother-in-law, Walter Hogan, who testified that on November 14, 1997, Gee had been sleeping on the floor of a day-care center that Hogan and his wife operated adjacent to their home. He recalled seeing his brother-in-law once after 8:00 p.m. and that he, Hogan, went to sleep at about 11:30. Tr. 300-06. On cross-examination, he admitted knowing about the arrest and that he kept this "important" exculpatory information to himself for months without contacting the police. He also refused to give a statement to an investigator from the District Attorney's office. When asked to specify the date he learned of the arrest, Hogan volunteered that he believed it involved a "parole violation." He further acknowledged that his home, and that of Gee, who lived next door, was about three minutes away from the mall across from which the Kwik-Fill gas station was located. Tr. 312-15, 326-29, 337.

### III. Discussion

#### A. Ineffective Assistance of Counsel

##### 1. Legal Principles

Under the familiar *Strickland* two-pronged standard, to demonstrate ineffective assistance

of counsel, a habeas petitioner must show both that his trial counsel's performance was so deficient that it caused errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In other words, Gee must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result of the trial would have been different. The Supreme Court instructed in *Strickland* that "[j]udicial scrutiny of counsel's performance must be highly deferential[,]" for "]i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Fairly assessing a trial attorney's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" as "[t]here are countless ways to provide effective assistance in any given case[,]" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel-namely, the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, *supra*. *E.g.*, *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992), *cert. denied*, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on

appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo*, 13 F.3d at 533-34; *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000). In other words, not only must a petitioner show that counsel's performance fell below objective standards of reasonableness, he must also show that he suffered constitutional prejudice as a result of counsel's mistakes. *See id.* Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)); *accord*, *e.g.*, *Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir.2001). The habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. at 754; *accord*, *e.g.*, *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

### 2. Pre-Trial Counsel's Alleged Ineffectiveness

CPL § 190.50 gives a defendant the right to appear as a witness at a grand jury proceeding. New York courts have consistently held, however, that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel. See, e.g., People v. Wiggins, 89 N.Y.2d 872, 675 N.E.2d 845, 653 N.Y.S.2d 91 (N.Y.1996) ("Defense counsel's failure to timely facilitate defendant's intention to testify before the Grand Jury does not, per se, amount to a denial of effective assistance of counsel under the circumstance of this case[.]"); *People v. Dennis*, 295 A.D.2d 755, 744 N.Y.S.2d 534 (App.Div. 3d Dept.2002) (holding that "defense counsel's failure to notify the People that defendant wished to testify before the Grand Jury does not, by itself, amount to ineffective assistance of counsel" and finding that "defendant's conclusory allegation that this failure may have impacted [his]

ability to present a viable defense to be insufficient to support an ineffective assistance of counsel claim") (alteration in original) (quotation omitted); *People v. Hunter*, 169 A.D.2d 538, 564 N.Y.S.2d 391 (1st Dept.1991); *People v. Turner*, 187 A.D.2d 469, 589 N.Y.S.2d 895 (2d Dept.1992).

Likewise, federal habeas courts repeatedly have declined to find that such claims warrant habeas relief, primarily because a petitioner typically cannot show that he was prejudiced by trial counsel's failure to secure his appearance before the grand jury. *E.g.*, *Bingham v. Duncan*, No. 01 Civ. 1371, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) (rejecting petitioner's claim that counsel was ineffective for failing to secure petitioner's right to testify before the grand jury and stating that "[g]iven that any defect in the grand jury proceeding was cured by petitioner's subsequent conviction, ... it necessarily follows as a matter of law that petitioner cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation") (internal quotation omitted); *Hutchings v. Herbert*, 260 F.Supp.2d 571, 578 & n. 2 (W.D.N.Y.2003) (Larimer, J.) (rejecting ineffective assistance of counsel claim; by failing to show "what he would have told the grand jury that would have prevented his indictment," petitioner "failed to demonstrate any prejudice from the alleged failure of his attorney to ensure an opportunity for him to testify before the grand jury") (and cases cited therein); *Cates v. Senkowski*, No. 02 Civ. 5957, 2003 WL 1563777, at *3 (S.D.N.Y. Mar.17, 2003) (rejecting petitioner's claim that counsel was ineffective for failing to ensure petitioner's ability to testify before the grand jury; stating that "[e]ven if petitioner could establish that his counsel's assistance fell below an objective standard, he definitely has not satisfied Strickland 's requirement of prejudice [since] conviction by the petit

jury cures any prejudice from such an error during the grand jury proceedings"); *Kohler v. Kelly*, 890 F. Supp.2d 207, 213 (W.D.N.Y. 1994) (Curtin, J.).

There are a number of valid, tactical reasons for counsel to decide that Gee should not testify before the grand jury. *Kohler*, 890 F. Supp.2d at 212. If petitioner had testified, he would have exposed himself to cross-examination by the prosecution, and he could have been questioned about his previous crimes. *Id.* In addition, petitioner would have waived the privilege against self-incrimination with regard to the information he volunteered, thereby providing several benefits to the prosecution: valuable pretrial discovery, as well as material with which to impeach the defendant if he should testifies at trial. *Id.* Although it would have been better practice for counsel to have consulted the petitioner on the issue, it was not unreasonable for counsel to decide that testifying before the grand jury was not in Kohler's best interests.

Notably, Gee does not mention what evidence he would have presented if he had appeared as a witness. Thus, he is unable to demonstrate that he was prejudiced by his inability to testify. Considering the amount of evidence the prosecution had, Gee's criminal record (he was adjudicated as a persistent violent felony offender following trial), and the low burden of proof applicable in grand jury proceedings, it is highly unlikely that Gee would not have been indicted. *Accord*, *e.g.*, *Kohler*, 890 F. Supp.2d at 214. Accordingly, I recommend that Gee's claim that pre-trial counsel was ineffective be dismissed.

### 2. Ineffectiveness of Trial Counsel

Gee contends that trial counsel was ineffective for the following three reasons. First, he alleges that "counsel, by eliciting the fact that the complaint [sic] viewed photographs with the police at the pretrial, opened the door to evidence of an additional identification of petitioner on

the State's redirect from photographs by the complainant which he should have objected to." The evidence against petitioner included the identification testimony of Amy Butler, the store clerk, who identified Gee in a pre-trial line-up; the surveillance video from the robbery; a composite of five still photographs culled from the videotape depicting the robbery; and a second composite of three still photographs, enlarged and positioned next to a mug shot of petitioner. On cross-examination, trial counsel elicited from Butler that she had viewed these still photographs at the pre-trial identification procedure. On rebuttal, Butler confirmed that the photographs depicted petitioner. Tr. 263. Gee apparently contends that trial should have objected to Butler's rebuttal testimony confirming that it was petitioner in the still photographs, by arguing that her answer constituted improper "lay opinion" testimony about an "ultimate fact." *See People v. Russell*, 79 N.Y.2d 1024 (1992). However, as respondent argued on direct appeal, such an objection would have been futile.

At issue in *People v. Russell* was whether the testimony of four lay witnesses who were not present at the scene, but who recognized the robber from photographs, was either "bolstering" or otherwise cumulative of that of the bank tellers who were present; or, alternatively, constituted "improper opinion about an ultimate fact." The *Russell* court held.

> The challenged testimony did not concern a previous extrajudicial identification of defendant or of the photographs of defendant. Rather, given the personal knowledge these witnesses had of defendant's appearance as of the time when the photographs were taken, their testimony served to aid the jury in making an independent assessment regarding whether the man in the bank photographs was indeed the defendant, a task made more onerous by defendant's altering his appearance after commission of the crime

79 N.Y.2d at 1025 (internal citations omitted). Like the defendant in *Russell*, petitioner Gee, had

altered his appearance in between the time of the robbery and the trial. However, in Gee's case, it was unnecessary to call additional witnesses to testify about his appearance at the time of crime because the change in appearance did not prevent Butler from making an in-court identification. There was nothing for trial counsel to object to on any of the grounds which were raised, albeit unsuccessfully, in *People v. Russell*. As respondent argued on appeal, Butler's identification testimony was no more of an "opinion" on an "ultimate fact" than the testimony of any eyewitness who indicates that a defendant is "the one." And, contrary to Gee's argument, *People v. Russell* certainly cannot be read as prohibiting identification testimony from eyewitnesses, like Butler or the bank tellers in *Russell*, who did not happen to know the perpetrator before the crime.

Second, Gee contends that "counsel decline [sic] to object to a mug shot of petitioner offered into evidence for the jury to compare to the stills, opened the door to admission of petitioner's prior involvement with the police." Petitioner's Memorandum of Law ("Pet'r Mem.") at 13 (Docket No. 16-2). To his Memorandum of Law (Docket No. 16-2), Gee attached a 2007 letter from trial counsel responding to several questions posed by Gee concerning the conduct of his defense. Interestingly, Gee's first question was, "Why did you introduce into evidence these still photographs and *not use them at trial*?" *See* Docket No. 16-2. Trial counsel responded that his recollection was that "it was the prosecutor who introduced the still photographs at your trial[,]" and that "[t]he photos depicted an individual who bore a strong resemblance to you." *Id.* Trial counsel explained, "I would not have introduced them because I though they would hurt your case." *Id.* Now, in a complete reversal of position, Gee is assailing trial counsel for not keeping them out of the trial. However, Gee has not offered any colorable

grounds on which trial counsel could have objected to their admission.

Third, Gee faults trial counsel for failing to request an affirmative defense charge. The theory of first degree robbery with which Gee was charged, require that the defendant "display[ ] what appears to be a . . . firearm." N.Y. PENAL LAW § 160.15(4)**.** An affirmative defense to this offense exists where the object used "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." *People v. Lockwood*, 52 N.Y.2d 790, 792 (1980). If the accused proves by a preponderance of the evidence that the firearm displayed in the robbery was not "a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged", then the most serious crime for which the accused can be convicted is second degree robbery. *People v. Cotarelo*, 71 N.Y.2d 941, 942 (N.Y. 1988).

Petitioner, in the letter referenced above, had asked counsel, "Why did you not request the affirmative defense charge pursuant to Penal Law § 160/14[sic](4) when the People's evidence proved there was no weapon?" Docket No. 16-2. Trial counsel responded that he did not "think the evidence 'proved there was no weapon'". *Id.* Rather, counsel explained,

> [t]he evidence showed that something that appeared to be a weapon was brandished and no weapon was later recovered. The affirmative defense is just that: the defendant must prove that what was displayed was not an operable firearm. Usually, the only way this can be done is if the defendant takes the stand and says, 'yes, I did the robbery, but the item I had was not a real gun.' Since our defense was one of mistaken identification, there was no evidence from which to argue that the item displayed was not a real gun. You recall that at your insistence we argued that the person depicted in the photograph was not you, and we even presented an alibi defense. There was thus no basis to argue that the weapon was not real.

Docket No. 16-2. Petitioner now argues that trial counsel should have had blown-up still

photographs made from the videotape depicting the object held by the robber and then shown them to the jury. This is mere speculation on petitioner's part and he has not come close to making the *prima facie* showing that he would be entitled to such a defense. Moreover, that defense was wholly at odds with the defense theories he urged trial counsel to pursue at trial. As the Supreme Court and the Second Circuit have repeatedly instructed, reviewing courts should not "second guess matters of trial strategy simply because the chosen strategy was not successful." *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983). Because "[t]here are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689, this Court cannot conclude that any of the alleged omissions of defense counsel were errors at all, let alone that they were objectively unreasonable decisions. Moreover, Gee has failed to demonstrate that he was at all prejudiced by trial counsel's representation, as there is no reasonable probability that the outcome of the proceeding would have been different had trial counsel performed as Gee believes he should have. Accordingly, I recommend that Gee's claim that trial counsel was ineffective be dismissed.

### 3. Ineffective assistance of appellate counsel

Gee contends that appellate counsel was ineffective in failing to argue on direct appeal that his attorneys were ineffective. However, as discussed *supra* in this Report and Recommendation, Gee "cannot establish that his trial counsel was ineffective, and thus appellate counsel cannot be faulted for failing to raise this unmeritorious claim on appeal." *Harper v. Goord*, No. 06-CV-485 (NGG)(JMA), 2009 WL 910341, at *15 (E.D.N.Y. Mar. 31, 2009) (citing *United States v. Arena*, 180 F.3d 380, 396 (2d Cir.1999) ("Failure to make a meritless argument does not amount to ineffective assistance. Nor does an action or omission that '"might

be considered sound trial strategy'" constitute ineffective assistance.") (quoting *Strickland v. Washington*, 466 U.S. at 689) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Jelinek v. Costello*, 247 F. Supp.2d 212, 290 (E.D.N.Y. 2003) ("Because trial counsel cannot be deemed ineffective, appellate counsel could not be deemed ineffective for failing to raise this claim on direct appeal."). Moreover, it is clear from the record that appellate counsel provided petitioner with effective representation. Gee's appellate counsel raised a number of potentially meritorious issues in a thorough and well-argued brief, and, notably, succeeded in obtaining a certificate granting leave to appeal from New York's highest appellate court. Although Gee's conviction ultimately was affirmed, the issue on which the Court of Appeals granted leave warranted extensive discussion and resulted in a lengthy opinion. Thus, there is no basis for declaring that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson*, 13 F.3d at 533. Accordingly, I recommend that Gee's habeas claims attacking the effectiveness of appellate counsel be dismissed.

## IV. Conclusion

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by Carl Z. Gee be **denied**. Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, the Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

s/ Hon. Victor E. Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: August 31, 2009
      Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

                                                /s   Hon. Victor E. Bianchini

                                                         VICTOR E. BIANCHINI
                                                   United States Magistrate Judge

Dated:  August 31, 2009
         Rochester, New York